## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **AL OTRO LADO, INC.** ) | |
| ) | |
| **511 E San Ysidro Blvd #333, San Diego, CA** ) | |
| **92173** ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| **v.** ) | **Civil Action No.: 1:23-cv-01525** |
| ) | |
| **IMMIGRATION AND CUSTOMS** ) | |
| **ENFORCEMENT,** ) | |
| ) | |
| **500 Twelfth Street SW, Washington, DC** ) | |
| **20536** ) | |
| ) | |
| *Defendant.* ) | |

---

## SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### Introduction

1. This Second Amended Complaint is filed with Defendant U.S. Immigration and Customs Enforcement's ("ICE") written permission under Federal Rule of Civil Procedure 15(a)(2).

2. In this Freedom of Information Act ("FOIA") suit, Plaintiff Al Otro Lado ("AOL" or "Plaintiff") seeks an order declaring unlawful ICE's practice of ignoring FOIA's mandatory 5 U.S.C. § 552(a)(2) online reading room publication requirements and ordering disclosure of those records, as described below.

### Jurisdiction and Venue

3. These claims being brought pursuant to 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552 (a)(2), this Court has jurisdiction pursuant to 5 U.S.C. § 552 (a)(4)(B), the Administrative Procedures Act,

5 U.S.C. § 701 *et. seq.*, and U.S.C. § 1331 (federal question) and 28 U.S.C. § 1391(e) (federal agency).

4. This Court has jurisdiction to, among other remedies, enjoin the agency from withholding agency records and order production of improperly withheld records. *See* 5 U.S.C. § 552(a)(4)(B) ("the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.")

5. As a jurisdictional matter, permitting ICE more time to complete a determination would require a showing of exceptional circumstances and due diligence in locating and processing requested records. *See* 5 U.S.C. § 552(a)(6)(C) ("If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.")

6. Venue is proper within this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## Parties

7. Plaintiff is a binational legal services, humanitarian aid, and public advocacy nonprofit organization based in Southern California and Tijuana, Mexico.

8. Plaintiff provides holistic legal and humanitarian support to immigrants both in the United States and in Mexico, through a multidisciplinary, client-centered, harm reduction-based practice.

9. AOL houses numerous projects focused on providing free legal services to immigrants, including through direct representation in asylum proceedings, reuniting separated families,

recovering the remains of deceased immigrant detainees for their families, matching immigrants with civil litigators in trafficking and wrongful death cases, and impact litigation.[1]

10. In order to fulfill its mission and successfully pursue its numerous immigration law projects, AOL must understand and navigate ICE's policies and procedures.

11. For example, investigating how an immigrant died in custody requires traversing a thicket of ICE and private prison FOIA policies and processes as well as understanding ICE's internal investigatory procedures and record management. ICE's refusal to provide routine records, especially policy records, hamstrings AOL's efforts and those of other similar organizations dedicated to serving the immigrant population.

12. Likewise, reuniting parents and children separated by ICE requires extensive use of FOIA. Currently, ICE still refuses to even make its family separation public, frustrating efforts to avoid or remedy family separation.

13. ICE is a component of the Department of Homeland Security ("DHS"), an "agency" within the meaning of FOIA, with its headquarters located in Washington, D.C.

14. ICE keeps the responsive records sought here in Washington, DC.

## Factual Allegations

**A. Refusal: ICE refuses to fulfill its §552(a)(2) mandatory publication obligations by posting critical information—including policies, employee manuals, and FOIA logs—on its public website.**

15. Plaintiff brings this action to compel ICE's compliance with its § 552(a)(2) mandatory obligations.

---

[1] *See, e.g., Al Otro Lado v. Wolf,* 952 F.3d 999 (9th Cir. 2020) (upholding preliminary injunction against Trump-era policy erecting extralegal barriers on asylum seekers); *Al Otro Lado v. Gaynor*, 513 F. Supp. 3d 1253, 1256 (S.D. Cal. 2021) (granting temporary restraining order against asylum seeker transit ban); *Al Otro Lado, Inc. v. Mayorkas*, No. 17-CV-02366-BAS-KSC, 2021 WL 3931890, at *1 (S.D. Cal. Sept. 2, 2021), *judgment entered,* No. 17-CV-02366-BAS-KSC, 2022 WL 3970755 (S.D. Cal. Aug. 23, 2022); *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168 (S.D. Cal. 2019).

16. ICE is currently in violation of its mandatory § 552(a)(2) obligations for failing to post online required records or provide an index of those records.

17. In relevant part, § 552(a)(2)—sometimes referred to as the reading room requirement—mandates that:

> Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—
> **(A)**final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
> **(B)**those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;
> **(C)**administrative staff manuals and instructions to staff that affect a member of the public;
> **(D)**copies of all records, regardless of form or format—
> **(i)**that have been released to any person under paragraph (3); and
> **(ii)(I)** that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or
> **(II)**that have been requested 3 or more times; and
> **(E)** . . . current indexes providing identifying information for the public as to any matter . . . . required by this paragraph to be made available or published . . . [including] a general index of the records referred to under subparagraph (D).

18. DHS's regulation 6 CFR 5.2, "Proactive disclosure of DHS records," accordingly require that agency components, such as ICE, proactively disclosure § 552(a)(2) records on an ongoing basis (emphasis added):

> Records that are required by the FOIA to be made available for public inspection in an electronic format are accessible on DHS's Web site, http://www.dhs.gov/freedom-information-act-foia-and-privacy-act. Each component is responsible for determining which of its records are required to be made publicly available, as well as identifying additional records of interest to the public that are appropriate for public disclosure, and for posting and indexing such records. *Each component shall ensure that posted records and indices are updated on an ongoing basis.* Each component has a FOIA Public Liaison who can assist individuals in locating records particular to a component. A list of DHS's FOIA Public Liaisons is available at http://www.dhs.gov/foia-contact-information and in appendix A to this part. Requesters who do not have access to the

internet may contact the Public Liaison for the component from which they seek records for assistance with publicly available records.

19. Because § 552(a)(2) disclosure is mandatory, D.C. Circuit precedent permits a plaintiff to bring a § 552(a)(2) claim even without having first filed a corresponding subsection (a)(3) FOIA request for those records.[2]

20. D.C. Circuit precedent bars a judicial order requiring an agency to publish records online to fulfil its § 552(a)(2) obligations.[3] However, nothing "prevents a district court from, consistent with section 552(a)(4)(B), ordering an agency to provide to the plaintiff documents covered by the reading-room provision."[4]

21. Plaintiff requests that ICE make available to Plaintiff copies of the § 552(a)(2) final orders and opinions, policies, staff manuals, and indices, including FOIA logs, as described below. ICE may make these records available either by publishing them online or by making them directly available to Plaintiff.

*ICE refuses to publish on its website those records required by § 552(a)(2).*

22. ICE is obligated to publish on its website those records required by § 552(a)(2).

23. ICE does not publish on its website all of those records required by § 552(a)(2).

---

[2] *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 846 F.3d 1235, 1241 (D.C. Cir. 2017) ("Equally certain under our case law, a plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records under section 552(a)(3).") (quoting *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972) ("[T]he opinions and orders referred to in Section 552(a)(2), when properly requested, are required to be made available, and ... such requirement is judicially enforceable without further identification under Section 552(a)(3), even though the agency has failed to make them available as required by Section 552(a)(2).")).

[3] *Id.* at 1243 (D.C. Cir. 2017) ("Given *Kennecott's* construction of section 552(a)(4)(B), we think it clear that a court has no authority under FOIA to issue an injunction mandating that an agency 'make available for public inspection' documents subject to the reading-room provision . . .").

[4] *Id.*

24. Members of the public looking for ICE's 552(a)(2) records will initially be directed to the ICE webpage entitled "Freedom of Information Act (FOIA)."[5] That webpage states that the ICE FOIA office "enables transparency in accordance with the law and [DHS] policy by overseeing and managing ICE's implementation of the FOIA." Warning that the ICE FOIA office is "currently experiencing a high volume of FOIA," users are referred to ICE's "FOIA Library,"[6] its statutorily-required FOIA reading room.

25. ICE describes its "FOIA library" as a place where ICE "proactively posts hundreds of documents online, including statistics, inspection reports, contracts, and other frequently requested documents."

26. The FOIA library webpage acknowledges that FOIA "requires agencies to make various types of records available for public inspection in electronic form."

27. Rather than provide some form of easily navigable index or search engine, as do other DHS components, ICE's FOIA library provides only an alphabetical list of categories named things like "Policies and Procedures," "Final Orders and Opinions," and "Forms." Clicking on a category reveals a list of links to various ICE records.

28. ECF 13-1 ("Exhibit 1"), incorporated by reference, is a printed PDF copy of ICE's online FOIA reading room as of July 19, 2023, with all record categories expanded to show the currently available records.[7]

29. These record categories are incomplete, both for failing to include all required record categories and for not providing all responsive records encompassed by a record category.

---

[5] https://www.ice.gov/foia
[6] https://www.ice.gov/foia/library
[7] As acknowledged in the November 10, 2023 joint status report, ECF # 20, in response to this case, ICE recently supplemented its reading room with additional FOIA logs.

30. For example, ICE devotes virtually all of its FOIA reading room to its contracts, statistics, and financial agreements—approximately 79 out of the 82 pages of records[8]--while providing virtually none of the statutorily required information explaining its policies and practices to the public.

   *1. § 552(a)(2)(A): the ICE FOIA reading room category "Final Opinion and Orders of Cases" contains no records at all.*

31. As previously stated, § 552(a)(2)(A) requires online publication of "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases."

32. ICE's FOIA reading room contains no responsive records. Instead, ICE claims that it "does not issue final opinions or orders related to cases in immigration court."

33. If ICE does in fact issue any non-exempt final adjudicatory opinions and orders, they must be disclosed under § 552(a)(2)(A).

   *2. § 552(a)(2)(B): ICE demonstrably fails to publish its policies not appearing in the Federal Register.*

34. Under § 552(a)(2)(B), ICE must publish on its website those "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register."

35. ICE has policies implementing federal statutes and administrative regulations.

36. ICE knows how many policies—whether named as "Directives" or some other term—it currently has and where those policies are located.

37. As described below, ICE has failed to publish many of these policies in its FOIA reading room's "Policy and Procedures" category or in any other section of its reading room.

---

[8] Collective Bargaining Agreements, p. 1-3; Contracts, p. 4-10; Detention Facility Contracts, p. 10-20; Detention Facility Reviews/Audits; 20-29; ICE FOIA Logs (for years 2007 to 2017), p. 31-34; Intergovernmental Service Agreements, p. 36-41; Office of Detention Oversight- Detention Facility Compliance Inspections, p. 41-68; PREA Audit Reports, p. 70-75; Student and Exchange Visa Reports, p. 75-78; Repatriation Agreements, p. 79-80; Reports, p. 80-82.

### a. *ICE incorrectly represents that it adopted only a single policy or procedure during the entire Trump administration.*

38. ICE has failed to publish all responsive policies or complete copies of those policies in its FOIA reading room.

39. For example, in the three pages devoted to "Policies and Procedures," ECF 13-1, p. 68-70, ICE represents that it only adopted a single policy or procedure during the entire Trump administration, "Stays of Removal and Private Immigration Bills (May 5, 2017)."[9] ECF 13-1, p. 70.

40. During the entire Trump administration, ICE has adopted or amended more than this single policy subject to FOIA reading room publication.

41. ICE has many policies pre-dating the Trump administration that are also not posted in its online reading room.

42. ICE knows which policies it has failed to post and where to locate those policies.

43. ICE can identify, locate, and post all policies currently missing from its FOIA reading room.

### b. *ICE incorrectly represents that it has passed only one policy or procedure in the past two years and only has five policies governing its national network of detention centers.*

44. ICE's "Policy and Procedures" category contains only one entry issued in the past two years, "Policy Authorizing the Body Worn Camera Pilot (Oct. 6, 2021)."[10]

45. In fact, according to a separate ICE webpage entitled "Detention Policies," a webpage not linked or referred to by the ICE reading room, ICE adopted at least three other policies during the last two years.[11]

---

[9] www.ice.gov/doclib/foia/dro_policy_memos/removalStaysPrivateImmigrationBills_05_05_2017.pdf
[10] https://www.ice.gov/doclib/foia/dro_policy_memos/19010.1_AuthorizingBodyWornCameraPilot_2021 1006.pdf.
[11] https://www.ice.gov/information-library/detention-policies. ICE's "Information Library" contains a host of records required to be disclosed under §552(a)(2). Based on the relief requested, this Court does not need to address the propriety of posting records outside the designated FOIA reading room.

46. The "Detention Policies" webpage states that "[t]o effectively manage its detention operations and ensure the health, safety and well-being of those in ICE custody, the agency requires compliance with the following directives and policies." In total, ICE lists just five policies there.

47. On information and belief, Plaintiff avers that ICE, a DHS component detaining more than 250,000 people per year—slightly more people than all of Arlington, Virginia—has in fact more than five detention policies.

48. Under § 552(a)(2)(B), ICE must publish these policies in its online FOIA reading room.

49. ICE has not published these policies in its online FOIA reading room.

### c. ICE's FOIA reading room mistakenly includes incomplete and outdated policies; according to the OIG, ICE's failure to clearly provide policy guidance resulted in countless child and parent separations.

50. Worse than no policy at all is an agency's misrepresentation of its policy. ICE's reading room is filled with these kinds of misrepresentations.

51. For example, the policy entitled "Parent/Child Separations," ECF 13-1, p. 69, is dated May 23, 2008, and is only a single page long. Examining the policy reveals that ICE has in fact only posted a cover letter for the policy and not the policy itself.[12]

52. This record contains no up to date information describing ICE's current family separation policy or procedures.

53. Even if this document had been posted, it is the wrong policy. It was superseded in 2017 by ICE Directive 11064.2, "Detention and Removal of Alien Parents or Legal Guardians."[13]

54. ICE Directive 11064.2 is not posted in ICE's FOIA reading room.

---

[12] https://www.ice.gov/doclib/foia/dro_policy_memos/parentchildseparationsmay232008.pdf
[13] https://www.ice.gov/doclib/detention-reform/pdf/directiveDetainedParents.pdf. This policy was itself superseded in 2022 by ICE Directive 11064.3: "Interests of Noncitizen Parents and Legal Guardians of Minor Children or Incapacitated Adults." https://www.ice.gov/doclib/news/releases/2022/11064.3.pdf. This policy is also not published in ICE's FOIA reading room.

55. ICE's failure to properly publish its family separation policy has inflicted—and still inflicts—actual harm on real people.

56. In the May 18, 2021 OIG report entitled "ICE Did Not Consistently Provide Separated Migrant Parents the Opportunity to Bring Their Children upon Removal," OIG faulted a "Lack of Clear ICE Guidance" as a major contributing reason leading to the involuntary separation of migrant parents and children by ICE during the Trump administration.

57. This OIG finding reflects only one instance in which ICE's refusal to adhere to § 552(a)(2) inflicted an injury upon the public.

58. Until ICE makes its policies public, it is impossible to know what other harms might have been averted by timely and appropriate publication in ICE's FOIA reading room.

### 3. § 552(a)(2)(C): ICE's FOIA reading room fails to publish any written staff manuals or instructions affecting the public.

59. As stated above, § 552(a)(2)(C) requires that ICE publish to its online reading room "administrative staff manuals and instructions to staff that affect a member of the public."

60. ICE's FOIA reading room does not contain a category corresponding to staff manuals or instructions.

61. Other ICE reading room categories provide no comprehensive archive of staff manuals or instructions.

62. ICE is a DHS component with an annual budget of over eight billion dollars and 21,499 staff positions.[14]

63. On information and belief, ICE uses staff manuals or written instructions to manage the responsibilities, duties, and goals of the employees working in those 21,499 positions.

---

[14] https://www.dhs.gov/sites/default/files/2022-03/U.S.%20Immigration%20and%20Customs%20Enforcement_Remediated.pdf at p. 7.

64. Some of those staff manuals or instructions describe how ICE staff must interact with the public or take actions "that affect a member of the public."

65. ICE knows how many staff manuals it has and where those staff manuals are located.

66. ICE knows how many written staff instructions it has and where those written staff instructions are located.

67. These staff manuals and instructions must be disclosed under § 552(a)(2)(C).

### 4. § 552(a)(2)(D): ICE has posted only one form in its FOIA library and no recent FOIA logs.

68. Again, under §552(a)(2)(D), ICE must post online every produced record that has been requested three or more times under (a)(3) or is "likely to become the subject of subsequent requests."

69. Forms are one of the chief means through which the public interacts with an agency. For example, securing a release from immigration custody requires an immigration bond, which requires a completed immigration bond form. That immigration bond form has certainly been released and requested more than three times. It should be posted in ICE's FOIA reading room. It is not.

70. Clicking on the "Forms" category provides access to only a single form: DHS Form G-123A Worksheet for Oral Report. ECF 13-1, p. 31.

71. On information and belief, ICE has received more than three requests for forms other than the G-123A Worksheet for Oral Report posted in its FOIA reading room.

72. All of the other myriad detention forms requested and used daily by detained immigrants and their families should also be posted in ICE's FOIA reading room. They are not.

73. Although not in its FOIA reading room, ICE does in fact post the immigration bond form on its website—it is available at https://www.ice.gov/doclib/forms/i352.pdf. Yet ICE's FOIA

reading room provides no indication that this form is available elsewhere or how to access it. No FOIA index points the public to the immigration bond form or even acknowledges its existence.

### 5. § 552(a)(2)(E): ICE must publish in its FOIA library its FOIA indices, including its FOIA logs.

74. § 552 (a)(2)(E) requires that ICE publish "current indexes providing identifying information for the public as to any matter . . . . required by this paragraph to be made available or published . . . [including] a general index of the records referred to under subparagraph (D)."

75. ICE's FOIA reading room does not contain all appropriate or complete (a)(2)(E) indexes contemplated by the statute.

76. The reading room itself does not satisfy the statutory index standard because it does not "provid[e] identifying information for the public as to any [(a)(2)] matter."

77. Moreover, until its recent response to this case, ICE had stopped publishing a critical component of the index requirement: FOIA logs.

78. FOIA logs (described in greater detail below) qualify as a FOIA index because they document all records released under (a)(2)(D).

79. ICE must publish online the required FOIA indices, including its FOIA logs.

### B. ICE creates FOIA logs yet stopped posting FOIA logs to its FOIA reading room in 2018.

80. ICE affirmatively posted its FOIA Logs for each month between September 2007 and December 2017. In January 2018, ICE abruptly stopped posting FOIA logs. ECF 13-1, p. 31-34.

81. FOIA logs are regularly created agency records chronologically documenting an agency's received FOIA requests and information related to that request, such as the identity of the requester and the information sought. *See Kwoka v. Internal Revenue Serv.*, No. 17-CV-1157

(DLF), 2018 WL 4681000, at *2 (D.D.C. Sept. 28, 2018) ("The IRS maintains a publicly accessible FOIA log that lists FOIA request numbers and other information . . .").

82. The functional demands of receiving, organizing, tracking, and fulfilling all incoming FOIA requests forces agencies to create FOIA logs, even if those logs are only initially intended for internal use and not specifically referred to as FOIA logs. *See Reps. Comm. for Freedom of the Press v. United States Customs & Border Prot.*, 567 F. Supp. 3d 97, 123 (D.D.C. 2021) ("The FOIA log is a chart detailing the notes taken by the FOIA specialist while processing the FOIA request . . ."), *appeal dismissed,* No. 21-5293, 2022 WL 801357 (D.C. Cir. Mar. 15, 2022).

83. FOIA mandates this kind of record keeping. § 552(a)(7) requires an agency to "establish a system to assign an individualized tracking number for each request" and "establish a telephone line or Internet service that provides information about the status of a request" including the date the agency received the request and the expected date of completion.

84. FOIA logs reduce administrative burden and FOIA request backlogs by preventing duplicative requests, duplicative reviews, duplicative releases, and duplicative lawsuits.

85. FOIA logs provide substantive detail as to what has already been requested and released, significantly aiding requesters and the government by facilitating duplicate FOIA requests. In a duplicate request, an interested party points to a FOIA log entry and asks that the agency send them the same responsive records that it has already located, collated, redacted and released previously.

86. The National Archives and Records Administration ("NARA") recognized the utility of FOIA logs in its 2016-18 Advisory Committee Final Report: "Proactively post[ing] and periodically

update[ing] agency FOIA logs . . . [a]llows requesters to make more targeted requests by giving the public a better understanding of what is requested and released under FOIA." [15]

87. ICE claims to suffer from a dire backlog of FOIA requests so grave as to hamstring its ability to comply with FOIA.

88. If ICE does in fact suffer from a dire backlog of FOIA requests, publishing or otherwise making available the records sought by AOL will help alleviate that backlog.

89. ICE's failure to post FOIA logs has made obtaining timely records from the agency significantly more difficult. The lack of FOIA logs has also invariably led to greater demands on ICE's FOIA resources because requesters are unaware that their desired records may already be easily obtained from the agency through a duplicate request.

*1. Other DHS components continue to publish FOIA logs online.*

90. Other DHS components consider FOIA logs to be required disclosures and, unlike ICE, provide an easily navigable website containing their mandatorily disclosed records.

91. For example, the DHS Office of the Inspector General's ("OIG") online FOIA reading room has a section entitled "Proactive FOIA Releases."[16] The first category of records in this section are "Freedom of Information Logs" released every quarter. These FOIA logs begin in 2010 and continue up until the present.

92. Similarly, Customs and Border Protection ("CBP")'s well-ordered online reading room allows users to locate its FOIA logs through an internal search engine.[17] For ease of access, CBP also separately posts its FOIA logs, organizing them by month.[18]

---

[15] Available at https://www.archives.gov/files/final-report-and-recommendations-of-2016-2018-foia-advisory-committee.pdf, at p. 19.
[16] https://www.oig.dhs.gov/foia/reading-room
[17] https://www.cbp.gov/site-policy-notices/foia/reading-room
[18] https://www.cbp.gov/document/foia-record/monthly-foia-logs-cy-2022; https://www.cbp.gov/document/foia-record/monthly-foia-logs-cy-2023

## C. The Requests

### *1. Plaintiff's October 8, 2021 FOIA request for 2018-21 ICE FOIA logs.*

93. Because ICE decided to stop honoring its statutory duty to publish FOIA logs, on October 8, 2021, Plaintiff submitted a FOIA request to ICE via the MuckRock platform seeking "all agency FOIA logs for the period from October 1, 2017, through September 30, 2021, in native format."[19]

94. As part of ICE's court-acknowledged pattern and practice of unlawfully failing to issue timely acknowledgments of FOIA requests,[20] ICE failed to acknowledge Plaintiff's request or assign it an individualized tracking number within the statutorily mandated time frame.

95. On May 4, 2022, ICE finally acknowledged Plaintiff's request and assigned it the individualized tracking number 2022-ICFO-14105.

96. On July 21, 2022, Plaintiff inquired when ICE intended to make its requested records available.

97. ICE did not reply.

98. On September 9, 2021, Plaintiff appealed ICE's failure to adhere to FOIA's deadlines.

99. ICE has still yet to rule on this appeal.

100. ICE's failure to rule on this appeal (as well as its failure to honor other mandatory FOIA deadlines) exhausted administrative remedies, permitting judicial review.

101. In response to this lawsuit, ICE has since supplemented its FOIA library with additional FOIA logs for most of 2018 to 2023. *See* November 9, 2023 Joint Status Report, ECF #20.

---

[19] *See* https://www.muckrock.com/foi/united-states-of-america-10/ice-foia-logs-119926/.

[20] *See, e.g., Transgender L. Ctr. v. ICE,* 46 F.4th 771, 777 (9th Cir. 2022) ("[H]ere the advocates' FOIA requests met first with silence and then with stonewalling; only after the advocates filed suit did the government begin to comply with its statutory obligations."); *Owen v. ICE*, 2:22-cv-00550, at 16 (C.D. Cal. January 12, 2023) ("The particularly troublesome pattern is that, almost across the board and regardless of when the initial request was filed, ICE did not provide any response or any documents until after litigation was filed."); *Stevens v. HHS*, 1:22-cv-05072, at 19 (N.D. Ill. March 30, 2023) ("[I]t is hard to swallow the proposition that an agency may, by its decisions on how to allocate resources, effectively make FOIA's expedited processing provision a dead letter.")

102.    However, ICE has yet to fully disclose all FOIA logs. *Id.*

103.    Similarly, because ICE has yet to fully disclose all FOIA logs, Plaintiff has not had an opportunity to fully review ICE's FOIA logs for contested redactions.

### *2. Plaintiff's September 25, 2023 FOIA request for (a)(2) records.*

104.    On July 19, 2023, Plaintiff amended its complaint to include claims for essentially all ICE (a)(2) records, with certain categories of records expressly requested.

105.    As part of an agreement between ICE and Plaintiff, on September 25, 2023, Plaintiff sent a written FOIA request to ICE asking for essentially all ICE (a)(2) records and also requesting certain specific categories of (a)(2) records.[21] *See* ECF 21-1, October 25, 2023 ICE FOIA acknowledgement letter ("Exhibit 2").

106.    In particular, Plaintiff sought, under § 552(a)(2)(B), any "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;" and specifically requested in this category "(1) ICE detention policies; (2) policies passed by ICE in the past two years, and; (3) ICE Directive 11064.2 and any other policies related to child and family separation."

107.    Under § 552(a)(2)(C), Plaintiff requested any "administrative staff manuals and instructions to staff that affect a member of the public." Within this category, Plaintiff specifically requested "staff manuals and instructions used by ICE's 21,499 employees."

108.    Under § 552(a)(2)(D), Plaintiff requested any "copies of all records, regardless of form or format—(i) that have been released to any person under paragraph (3); and (ii)(I) that because of the nature of their subject matter, the agency determines have become or are likely to

---

[21] As detailed in the October 4, 2023 Joint Status Report, ¶ 4, this written request resolved Plaintiff and ICE's disagreement as to whether a written FOIA request is a prerequisite for jurisdiction over alleged (a)(2) violations.

become the subject of subsequent requests for substantially the same records; or (II)that have been requested 3 or more times." In particular, Plaintiff requested "ICE forms routinely used by members of the public, especially immigration bond forms."

109. Under § 552(a)(2)(E), Plaintiff requested "current indexes providing identifying information for the public as to any matter . . . . required by this paragraph to be made available or published . . . [including] a general index of the records referred to under subparagraph (D)." In particular, Plaintiff requested "FOIA logs, particularly FOIA logs for the years 2017 to 2021."

110. ICE sent Plaintiff an acknowledgement letter on October 25, 2023. *See* Exhibit 2.

111. Citing the complexity of the request, the acknowledgement letter invoked the statutory extension permitting ICE an additional ten days to respond to Plaintiff's request.

112. As of November 16, 2023, ICE has not issued a determination to Plaintiff.

### 3. ICE has failed to produce all responsive records or make a timely determination.

113. In relevant part, 5 U.S.C. § 552(a)(6)(A) requires that an agency "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of" the reasons for its determination.

114. "[I]n order to make a 'determination' . . . [an] agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

115. The ICE acknowledgement letters received by Plaintiff are not determinations.

116. ICE has not given a determination to Plaintiff regarding its 2021 request for FOIA logs.

117.    ICE has not given a determination to Plaintiff regarding its 2023 request for (a)(2) records.

118.    Under 5 U.S.C. § 552(a)(6)(C)(i), a request shall be "deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."

119.    Plaintiff has therefore exhausted its administrative remedies with respect to these requests.

### D. Remedies

***1.      Because Plaintiff seeks mandatorily disclosed records under § 552(a)(2), Defendant must make those records available to Plaintiff without further delay, cost, or litigation, either by agreement or via court order.***

120.    ICE has not fully fulfilled its § 552(a)(2) obligations.

121.    Given the uncontestable nature of the law in question, the most appropriate step for resolving this litigation while preserving judicial resources is an agreed order requiring ICE to produce the requested § 552(a)(2) records directly to Plaintiff and pay Plaintiff's fees and costs incurred by ICE's refusal to obey FOIA.

122.    This Court has jurisdiction to enjoin an agency from withholding agency records and order production of improperly withheld records. *See* 5 U.S.C. § 552(a)(4)(B) ("the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.")

123.    If ICE refuses to enter into such an agreed order, the appropriate remedy is for this Court to order disclosure of all § 552(a)(2) records without further delay, cost, or litigation.

124.    ICE cannot delay release of (a)(2) records. Even before ICE came into existence, Congress required that (a)(2) records be posted to ICE's FOIA reading room on an ongoing basis.

125.    ICE has not updated its reading room on an ongoing basis.

126.    Even if (a)(2) did not require ongoing updates, in order to receive additional time to review its records before making them available, ICE would need to demonstrate via motion both due diligence and exceptional circumstances. *See* 5 U.S.C. § 552(a)(6)(C) ("If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."); *Daily Caller News Found. v. FBI*, 387 F. Supp. 3d 112, 117 (D.D.C. 2019).

127.    "Exceptional circumstances" means exactly that: "routine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances." *Id.* at 116 (D.D.C. 2019) (quoting H.R. Rep. 104-795 at 24 (1996)).

128.    The meaning of "due diligence" is equally clear; an agency must demonstrate that, despite failing to meet FOIA's deadlines, it has been assiduously laboring to fulfill its statutory obligations to a record requestor. *See Gov't Accountability Project v. HHS,* 568 F. Supp. 2d 55, 64 (D.D.C. 2008) (agency failed to show due diligence where its few actions regarding request included "acknowledging receipt" of an appeal without providing "any further information regarding the timeline for processing its FOIA request or its appeal.")

129.    No exceptional circumstances prevent ICE from fulfilling its statutory duty of making (a)(2) records timely available.

130.    ICE's annual number of FOIA requests received has fallen from a height of 90304 in 2020 to 39,716 in 2021 and finally down to 23681 requests in 2022.

131.    ICE's full time FOIA staff had actually increased during this same time period, rising from 57 employees in 2020 to 60.5 employees by 2022.[22]

---

[22]All FOIA dates cited can be viewed at United States Department of Justice's annual FOIA report data page, https://www.foia.gov/data.html. The data cited was collected on May 25, 2023.

132.     During this time, ICE has made no substantial request for additional funds from Congress.

133.     A demonstrable decrease in FOIA requests combined with no request for additional resources undercuts any agency claim of exceptional circumstances. *See Gov't Accountability Project v. HHS.,* 568 F. Supp. 2d 55, 60-61 (D.D.C. 2008) (concluding that a declining agency FOIA workload fails to qualify as exceptional circumstance).

134.     Thus, no exceptional circumstances exist to justify ICE's failure to properly disclose (a)(2) records.

135.     ICE has not exercised due diligence in fulfilling its statutory duty of making (a)(2) records timely available on an ongoing basis.

136.     ICE unilaterally decided to stop honoring its (a)(2) obligations.

137.     A unilateral decision to stop honoring (a)(2) obligations is not an exercise of due diligence.

138.     Therefore, this Court has the authority to order ICE to disclose its (a)(2) records without further delay or litigation.

## **Claims**

### **COUNT I: VIOLATIONS OF 5 U.S.C. § 552(a)(2)**

139.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

140.     As described previously, Congress requires mandatory online publication of certain ICE records under 5 U.S.C. § 552(a)(2), including all final agency orders and opinions, policies not otherwise published in the Federal Register, staff manuals and instructions, and FOIA indices, including FOIA logs.

141.     ICE has not published these records online as required by 5 U.S.C. § 552(a)(2).

142.     Plaintiff made two written FOIA requests for ICE (a)(2) records.

143.   Alongside general demands for (a)(2) compliance, those requests sought in aggregate: (1) ICE detention policies; (2) policies passed by ICE in the past two years; (3) ICE Directive 11064.2 and any other policies related to child and family separation; (4) staff manuals and instructions used by ICE's 21,499 employees; (5) ICE forms routinely used by members of the public, and; (6) any outstanding ICE FOIA logs.

144.   ICE has failed to make available all of Plaintiff's requested records.

145.   Plaintiff is therefore entitled to an order requiring ICE to provide Plaintiff with the wrongfully withheld (a)(2) records and also to fulfill its obligation to continual update its FOIA reading room.[23]

## COUNT II: VIOLATIONS OF 5 U.S.C. § 552(a)(6)(A)

146.   Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

147.   Plaintiff made two written FOIA requests for ICE (a)(2) records.

148.   In response, ICE violated and continues to violate 5 U.S.C. § 552(a)(6)(A) by failing to make appropriate determinations on those requests.

149.   No legal justification exists permitting ICE to ignore FOIA's clear statutory requirements.

150.   Because ICE could never carry the statutory burden required to receive additional time for reviewing its FOIA records, this Court has jurisdiction to declare ICE's failure to make a timely determination unlawful and enjoin the agency's continued violation, as well as ordering production.

151.   Plaintiff is therefore entitled to injunctive and declaratory relief requiring ICE to make a determination on Plaintiff's requests and then produce Plaintiff's requested records.

---

[23] ICE may fulfill an order to produce these records to Plaintiff by voluntarily making the responsive records available in its FOIA reading room, as Congress intended.

## **Relief Requested**

Plaintiff asks that this Court:

1.      Enter judgment on all counts in favor of Plaintiff and against ICE.

2.      Declare unlawful ICE's failure to make a timely determination responsive to Plaintiff's two written FOIA requests.

3.      Declare ICE's withholding of and failure to publish or index (a)(2) records unlawful and order ICE to produce, within twenty (20) days of the Court's order, or by such other date as the Court deems appropriate, all responsive (a)(2) records, including all final agency orders and opinions, policies not otherwise published in the Federal Register, staff manuals and instructions, and FOIA indices, including FOIA logs.

4.      Order ICE to continue fulfilling its (a)(2) obligations by keeping its FOIA reading room up to date in the future.

5.      Award Plaintiff reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A).

6.      Award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Submitted: November 22, 2023.

/s/ Andrew Fels
Andrew Fels, Esq. TN #036005
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org

/s/ Patrick Taurel

Patrick Taurel, Esq. DC # 741700
Grossman Young & Hammond, LLC
4922 Fairmont Avenue, Suite 200
Bethesda, MD 20814
240.403.0913
ptaurel@grossmanyoung.com

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

<div style="margin-left:40%">

/s/ Andrew Fels_____

Andrew Fels, Esq. TN #036005

3214 Fountain Park Blvd.

Knoxville, TN 37917

865-567-4881

andrew@alotrolado.org


/s/ Patrick Taurel_____

Patrick Taurel, Esq. DC # 741700

Grossman Young & Hammond, LLC

4922 Fairmont Avenue, Suite 200

Bethesda, MD 20814

240.403.0913

ptaurel@grossmanyoung.com

</div>