**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AL OTRO LADO, INC.,<br><br>    *Plaintiff,*<br><br> *v.*<br><br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT,<br><br>    *Defendant.* | No. 1:23-cv-01525-JMC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    I.    The Freedom of Information Act ..................................................................................... 2

    II.   This Litigation ............................................................................................................... 4

LEGAL STANDARDS ....................................................................................................... 10

ARGUMENT ...................................................................................................................... 11

    I.    ICE has provided Plaintiff all the relief available to it in this FOIA case under 5 U.S.C. § 552(a)(2). ................................................................................................................ 11

    II.   Plaintiff's wholly speculative claims to the contrary cannot defeat summary judgment. 15

CONCLUSION .................................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**

*ACLU v. Dep't of Def.*,
    628 F.3d 612 (D.C. Cir. 2011) ........................................................................ 10, 15

*Alyeska Pipeline Serv. v. EPA*,
    856 F.2d 309 (D.C. Cir. 1988) ............................................................................. 16

*Bonner v. U.S. Dep't of State*,
    928 F.2d 1148 (D.C. Cir. 1991) ........................................................................... 16

*Brayton v. Off. of U.S. Trade Representative*,
    641 F.3d 521 (D.C. Cir. 2011) ............................................................................. 10

*Cannon v. District of Columbia*,
    717 F.3d 200 (D.C. Cir. 2013) ............................................................................. 14

*Church of Scientology v. IRS*,
    816 F. Supp. 1138 (W.D. Tex. 1993) .................................................................. 17

*CREW v. Dep't of Just.*,
    *846* F.3d 1235 (D.C. Cir. 2017) ............................................................................ 4

* *DiBacco v. U.S. Army*,
    795 F.3d 178 (D.C. Cir. 2015) ................................................................. 12, 14, 16

*Diamond v. Atwood*,
    43 F.3d 1538 (D.C. Cir. 1995),
    *appeal after remand*, 132 F.3d 1481 (D.C. Cir. 1997) .......................................... 10

*Ground Saucer Watch, Inc. v. CIA*,
    692 F.2d 770 (D.C.Cir.1981) ......................................................................... 12, 16

*Humane Soc'y of the United States v. U.S. Fish & Wildlife Serv.*,
    838 F. App'x 721 (4th Cir. 2020) ......................................................................... 17

*Iturralde v. Comptroller of Currency*,
    315 F.3d 311 (D.C. Cir. 2003) ............................................................................. 12

* *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*,
    88 F.3d 1191 (D.C. Cir. 1996) ......................................................................... 4, 11

\* *Kissinger v. Reps. Comm. for Freedom of the Press*,
    445 U.S. 136 (1980) ........................................................................................... 17

*L.A. Times Commc'ns, LLC v. Dep't of the Army*,
    442 F. Supp. 2d 880 (C.D. Cal. 2006) ........................................................... 10, 15

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ......................................................................... 4

*Media Rsch. Ctr. v. Dep't of Just.*,
    818 F. Supp. 2d 131 (D.D.C. 2011) ................................................................... 10

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ............................................................................................ 3

\* *Oglesby v. U.S. Dep't of Army*,
    920 F.2d 57 .......................................................................................................... 16

*Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Hum. Servs.*,
    43 F. Supp. 3d 28 (D.D.C. 2014)…………………………………………...14

\* *Prisology, Inc. v. Fed. Bureau of Prisons*,
    852 F.3d 1114 (D.C. Cir. 2017) ...................................................................... 4, 16

*Pub. Citizen v. Dep't of State*,
    276 F.3d 634 (D.C. Cir. 2002) ............................................................................ 4

*Pub. Citizen v. Dep't of Just.*,
    491 U.S. 440 (1989) ............................................................................................ 3

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ......................................................................... 16

*Steinberg v. U.S. Dep't of Just.*,
    23 F.3d 548 (D.C. Cir. 1994) ............................................................................. 16

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
    489 U.S. 749 (1989) ............................................................................................ 2

\* *Weisberg v. U.S. Dep't of Just.*,
    705 F.2d 1344 (D.C. Cir. 1983) ................................................................... 12, 14

*Wilbur v. CIA*,
    355 F.3d 675 (D.C. Cir. 2004) ........................................................................... 16

*Yeager v. Drug Enf't Admin.*,
    678 F.2d 315 (D.C. Cir. 1982) ........................................................................... 17

*Yonemoto v. Dep't of Veterans Affs.,*
  686 F.3d 681 (9th Cir. 2012) ................................................................. 10

*Zivotofsky ex rel. Ari Z. v. Sec'y of State,*
  444 F.3d 614 (D.C. Cir. 2006) ................................................................. 4


STATUTES

5 U.S.C. § 552(a)(1) ................................................................................ 1, 2

5 U.S.C. § 552(a)(2) ............................................................................. 1, 2, 5

5 U.S.C. § 552(a)(2)(A) ................................................................................ 5

5 U.S.C. § 552(a)(2)(B) ................................................................................ 5

5 U.S.C. § 552(a)(2)(C) ................................................................................ 5

5 U.S.C. § 552(a)(2)(D) ................................................................................ 5

5 U.S.C. § 552(a)(2)(E) ................................................................................ 5

5 U.S.C. § 552(a)(3) ............................................................................. 1, 2, 6

5 U.S.C § 552(a)(3)(C) ................................................................................ 3

5 U.S.C § 552(a)(3)(D) ................................................................................ 3

5 U.S.C. § 552(a)(4)(B) ............................................................................. 3, 4

5 U.S.C. § 552(b) ...................................................................................... 3

5 U.S.C. § 702 ........................................................................................ 17

FOIA Improvement Act of 2016,
  Pub. L. No. 114-185, 130 Stat. 538, 538, Pub. L. No. 114-185 ....................... 2


RULES

Fed. R. Civ. P. 56(a) ................................................................................ 10

**OTHER SOURCES**

*FOIA ICE Library*, ICE, https://www.ice.gov/foia/library ........................................................ 1, 15

*Guidance on Submitting Certification of Agency Compliance with FOIA's Reading Room
     Requirements*, OIP: U.S. Dep't of Just. (posted June 7, 2008),
     https://www.justice.gov/oip/blog/foia-post-2008-guidance-submitting-certification-agency-
     compliance-foias-reading-room (July 26, 2021) ........................................................................ 3

## INTRODUCTION

The Freedom of Information Act ("FOIA") plays an important role in ensuring transparency in government. It allows individuals to request records of interest from agencies, and it requires agencies to proactively disclose certain records to the public even absent a specific request. *See generally* 5 U.S.C. § 552(a)(1)–(3). Information subject to proactive disclosure includes policy statements, administrative staff manuals, and frequently requested records. *See id.* § 552(a)(2).

In 2023, Plaintiff Al Otro Lado, Inc. initiated this action against Defendant Immigration and Customs Enforcement ("ICE") seeking access to records covered by FOIA's proactive disclosure provision. Since then, ICE has filed a sworn declaration averring that it searched all files likely to contain responsive records, posted such responsive records to its online FOIA Library,[1] and will continue to update its website with new records moving forward. *See* ECF No. 31-1. In the nearly six months since filing that declaration, ICE has continued to comply by regularly posting new records to its FOIA Library.

Despite this undisputed record of compliance, Plaintiff apparently wishes to keep this case alive. But it offers nothing more than wholly unsupported accusations that ICE is failing to comply with its declaration and a list of recent ICE actions that it claims shows that additional records either must exist or should have been created but were not. *See* Pl.'s Status Report, ECF No. 37. Either theory fails. Rank speculation that records must exist is not enough to overcome ICE's declaration and the evidence in ICE's FOIA Library. Even if there were credible allegations of withheld records postdating ICE's completion of production in this case, Plaintiff would first have to submit a new FOIA request for those records to have standing to seek them in this case, and

---

[1] *FOIA ICE Library*, ICE, https://www.ice.gov/foia/library.

amend its complaint, yet again. Such an *ad infinitum* approach to litigating FOIA cases is disfavored. And FOIA only requires agencies to disclose covered non-exempt records, not create them. If Plaintiff wishes to challenge the agency's actions, rather than its production of documents, FOIA is not the proper vehicle in which to do it. The Court should grant summary judgment in favor of ICE.

## BACKGROUND

### I.    The Freedom of Information Act

The Freedom of Information Act seeks to ensure that citizens know "what their government is up to." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989) (citation omitted). To that end, it provides for public access to agency records through three distinct, yet complementary provisions. *See* 5 U.S.C. § 552(a)(1)–(3). Subsection (a)(3) allows members of the public to submit specific requests to agencies for records that are of interest to them. The other two subsections direct agencies to proactively make certain records available to the public even absent a request. *See id.* §§ 552(a)(1), (a)(2). At issue here is one of the proactive disclosure provisions—5 U.S.C. § 552(a)(2)—which requires agencies to "make available for public inspection" the following categories of information: (A) final opinions and orders made in the adjudication of cases; (B) statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; (C) administrative staff manuals and instructions to staff that affect a member of the public; (D) records released pursuant to a request that concern a matter of popular interest and so are likely to be the subject of subsequent requests; and (E) a "general index" or FOIA log of records covered by subsection (D). *See id.* § 552(a)(2).

Agencies must make subsection (a)(2) records available in an electronic format, *see* FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538, 538. They typically do so by

posting records to their websites in a designated area known as a "FOIA Library."  Because online FOIA Libraries were previously referred to as "electronic Reading Rooms," subsection (a)(2) is sometimes called FOIA's "Reading Room" provision.[2]

Not all records, however, need to be disclosed under FOIA.  The Act contains nine specific exemptions, 5 U.S.C. § 552(b), which presumptively allow the agency to withhold information falling within those exemptions. *See id.* § 552(b).  Agencies may withhold exempt information even if the record falls within the affirmative-disclosure provisions of § 552(a)(2) or was requested by an individual under § 552(a)(3).  *See id.* § 552(b) ("This section does not apply to matters that [fall within an exemption.]"); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 160 (1975) (holding that the attorney work-product privilege applied, and thus the document was exempt even if it fell within a § 552(a)(2) category).

Plaintiffs seeking to enforce FOIA in federal court do so by invoking FOIA's remedial provision—5 U.S.C. § 552(a)(4)(B), which provides that "[o]n complaint," the appropriate district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

To invoke federal jurisdiction under § 552(a)(4)(B), Plaintiffs must establish standing by showing that they requested records from the agency, and the agency improperly denied the request. *See Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 449 (1989) (analogizing in non-FOIA case that all that is required to establish standing under FOIA is for requesters to show "that they

---

[2] *See, e.g.*, *Guidance on Submitting Certification of Agency Compliance with FOIA's Reading Room Requirements*, OIP: U.S. Dep't of Just. (posted June 7, 2008), https://www.justice.gov/oip/blog/foia-post-2008-guidance-submitting-certification-agency-compliance-foias-reading-room (July 26, 2021) (instructing agencies to organize their records "from a citizen-centered perspective" in a way that allows for efficient and easy location of specific documents, and suggesting that agencies list the records under separate links or headings on their websites).

sought and were denied specific agency records"); *Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006). That requirement applies even when Plaintiffs seek to enforce FOIA's proactive disclosure provisions. *Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d 1114, 1117 (D.C. Cir. 2017); *see also CREW v. Dep't of Just.*, 846 F.3d 1235, 1240 (D.C. Cir. 2017) (section (a)(2) case in which plaintiff made a request of the agency and the agency denied the request). As the D.C. Circuit has explained, Plaintiffs seeking reading room records lack standing to bring suit unless they first "made a request of the agency and the agency denied the request." *Id.*

Further, because FOIA only gives district courts jurisdiction "to order the production of agency records improperly withheld *from the complainant*," 5 U.S.C. § 552(a)(4)(B) (emphasis added), the D.C. Circuit has held that the remedy in cases brought under FOIA's proactive disclosure provisions is limited to ordering production to the individual complainant, not publication online. *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1202–03 (D.C. Cir. 1996) (holding that "§ 552(a)(4)(B) does not authorize district courts to order publication of such documents [subject to FOIA's proactive disclosure provisions]"); *see also CREW*, 846 F.3d at 1243 (explaining that a "court has no authority under FOIA to issue an injunction mandating that an agency make available for public inspection documents subject to the reading-room provision" but can require furnishing of such documents to the plaintiff (citation omitted)).

## II.    This Litigation

On October 8, 2021, Plaintiff Al Otro Lado, Inc. submitted a FOIA request to Defendant Immigration and Customs Enforcement ("ICE"), seeking ICE FOIA logs of records released under § 552(a)(3) that have been requested three or more times, for the period between October 1, 2017

and September 30, 2021.  *See* Compl. for Declaratory & Injunctive Relief, ECF No. 1.  Plaintiff

filed suit on May 27, 2023, to compel production of the requested logs, *see id.*, and later amended

its complaint to allege that ICE had improperly withheld other records covered by FOIA's reading

room provision, 5 U.S.C. § 552(a)(2), First Am. Compl. for Declaratory & Injunctive Relief, ECF

No. 13, but had not submitted a FOIA request for those materials,  *see* Joint Proposed Schedule,

ECF No. 18.  Because the parties disagreed as to whether Plaintiff had to submit a request for these

additional § (a)(2) records to have standing, *see* ECF No. 18 ¶ 4, the parties decided that Plaintiff

would submit another FOIA request for the § (a)(2) records, which it did on September 25, 2023,

Second Am. Compl. for Declaratory & Injunctive Relief, Ex. 2, ECF No. 21-1.

      In that request, Plaintiff sought five categories of records: (A) final opinions and orders

made in the adjudication of cases, *see* 5 U.S.C. § 552(a)(2)(A); (B) statements of policy and

interpretations adopted by ICE—including ICE detention policies, policies passed by ICE in the

past two years, and ICE Directive 11064.2 and any other policies related to child and family

separation, *see id.* § 552(a)(2)(B); (C) any administrative staff manuals and instructions to staff

that affect a member of the public, *see id.* § 552(a)(2)(C); (D) forms routinely used by members

of the public, especially immigration bond forms, under § 552(a)(2)(D); and (E) FOIA logs from

2017 to 2021 documenting every record released under § 552(a)(3) that has been requested three

or more times or is likely to become the subject of subsequent requests, *see id.* § 552(a)(2)(D); *see*

*id.* § 552(a)(2)(E).

      Pursuant to the parties' agreement, Plaintiff again amended its complaint so that its request

for relief would encompass those records.  *See* Second Am. Compl. for Declaratory & Injunctive

Relief, ECF No. 21; ECF No. 21-1.  The Second Amended Complaint is therefore the operative

complaint in this action, and it sought production of those reading room records.  ECF No. 21.

Defendant answered that complaint in December 2023.  Answer to Second Am. Compl., ECF No. 22.

From the outset, the parties worked amicably together, making proposals to the Court regarding the documents ICE would search for and produce to Plaintiff and agreeing on a production schedule.  *See, e.g.*, Joint Status Report, ECF No. 24.  In particular, ICE identified, in its first declaration, places where responsive records were likely to be located.  *See* Decl. of Fernando Pineiro, ECF No. 24-1.  With respect to policy statements, ICE explained that its Office of Regulatory Affairs and Policy maintains a central repository called the ICE Policy Manual ("IPM") that was likely to have responsive records.  *See id.* ¶ 6.  ICE also identified four other offices that were reasonably likely to have potentially responsive policy statements—Enforcement and Removal Operations ("ERO"), Homeland Security Investigations ("HSI"), the Office of Human Capital, and the Office of the Chief Financial Officer—and indicated its willingness to search these offices as well.  *See id.* ¶¶ 6, 7.

As for the requested staff manuals, ICE determined that six of its offices were reasonably likely to have responsive records—ERO, HSI, Office of Public Affairs ("OPA"), Office of Acquisition Management ("OAQ"), Office of Information Governance and Privacy ("IGP"), and the Office of Immigration Program Evaluation ("OIPE")—and the ICE FOIA office directed those offices to search for the requested records.  *Id.* ¶ 8.  As for the requested forms used by the public and final agency opinions and orders, ICE explained that the forms were all already online and that ICE does not issue final opinions or orders in immigration cases, *see* ECF No. 24; *see also* ECF No. 24-1 ¶¶ 5, 9.  Rather, the U.S. Department of Justice, Executive Office for Immigration Review, issues such opinions and orders.  ECF No. 24-1 ¶ 5.  The parties agreed that, as to the

FOIA logs, statements of policy and interpretation, and administrative staff manuals and instructions, production would be complete by October 31, 2024.  *See* ECF No. 24.

In light of the parties' submission, the Court entered the requested schedule, ordering ICE to complete production of the above categories of (a)(2) records, except the forms used by the public and final opinions and orders, by October 31, 2024.  *See* Scheduling Order, ECF No. 25. The Court further ordered ICE to file a declaration upon completing production averring that it searched all files likely to contain responsive materials, finished production of all current § (a)(2) records, and will continue to fulfill its statutory duty to regularly update its reading room.  *See id.*

The parties continued working amicably together and updating the Court regularly about ICE's progress.  *See, e.g.*, Joint Status Reports, ECF Nos. 26–30.  ICE completed production by the agreed-upon date.  *See* Decl. of Fernando Pineiro, ECF No. 31-1 ¶¶ 4, 29.  On November 29, 2024, ICE filed a declaration in compliance with the Court's order.  *See id.*  In that declaration, ICE identified the five categories of documents that Plaintiff sought in its FOIA request and second amended complaint: (A) final opinions and orders under 5 U.S.C. § 552(a)(2)(A); (B) statements of policy and interpretations under 5 U.S.C. § 552(a)(2)(B); (C) administrative staff manuals and instructions under 5 U.S.C. § 552(a)(2)(C); (D) forms routinely used by members of the public under § 552(a)(2)(D); and (E) FOIA logs from 2017 to 2021 under § 552(a)(2)(E).  *Id.* ¶ 5.  ICE explained in its declaration that the Court did not require ICE to search for or produce forms used by the public after ICE explained that such forms were already online, *id.* ¶ 16; and that the Court likewise did not require ICE to search for or produce final opinions and orders due to ICE's explanation that it does not issue such opinions or orders, *id.* ¶ 12.

With respect to the other categories, ICE discussed its searches for each category in detail, explaining, for example, that the ICE FOIA Office searched a platform called SecureRelease for

the requested FOIA logs, *id.* ¶ 9; that, for policy statements, ICE searched a central repository of policies and directed all of the offices it had identified as likely to have responsive policy statements to search their records as well, *id.* ¶ 23; and that ICE directed each of the six program offices likely to have administrative staff manuals and instructions to process and produce those responsive, non-exempt records, too, *id.* ¶ 28.

ICE then explained that it produced the responsive, non-exempt documents by voluntarily posting them to its FOIA Library, and again went category-by-category detailing the dates on which productions were made and the quantity of documents that were produced, *see id.* ¶ 29–33. Finally, ICE averred that, moving forward, it will continue to comply with (a)(2) by posting new (a)(2) records to its website as they are created and finalized. *Id.* ¶ 34–39. In short, ICE averred and demonstrated that it searched all files likely to contain responsive materials and finished productions of all current § 552(a)(2) records, and further averred that it will continue to fulfill its statutory duty to regularly update its FOIA reading room (available in its ICE FOIA Library webpage at https://www.ice.gov/foia/library.). *Id.* ¶ 4.

After ICE filed its declaration, Plaintiff reviewed ICE's FOIA productions and the declaration. On January 23, 2025, the parties filed a Joint Status Report in which they reported that Plaintiff finalized its review of the productions and declaration and identified certain additional records that it believed were responsive to its FOIA request and should be produced. *See* Joint Status Report, ECF No. 32. ICE considered Plaintiff's list of additional records, and the parties were discussing the status of the case and any outstanding issues. *See id.*

By the time the next Joint Status Report was due on March 24, it became clear that Plaintiff had shifted from its previous stance of working collaboratively with Defendant to wind down and dismiss this case, to one of using this FOIA case as a vehicle to challenge the actions of the new

administration.  In a status report filed on March 25, Plaintiff began by acknowledging ten policies that ICE published to its reading room between January 22 and March 20, 2025.  Pl.'s Status Report at 2–3, ECF No. 37.  It then claimed that since January 22, ICE has taken a number of actions that are not authorized by "extant ICE policies or staff instructions[.]"  ECF No. 37 at 3. That list of actions is ripped from the headlines.  The actions concern ICE's alleged deportation of foreign nationals, "[w]ithout due process," to "an El Salvadorian torture prison renowned for its cruel conditions and human rights violations" and related litigation before Judge Boasberg, and ICE's alleged attempts to detain individuals for exercising their first amendment rights.  *Id*. at 3–4.  One example of an action that Plaintiff claims is apparently authorized by a policy or staff instruction that is "hidden from this Court and the public" is ICE's "[m]ocking Judge Boasberg by falsely claiming that his order came too late to be obeyed."  *Id*. at 1, 3.  Another is ICE's "[r]efusing to provide information to Judge Boasberg regarding the deportation flights to the El Salvadorian torture prison."  *Id*. at 3.  And although Plaintiff's theory is apparently that there must be a policy or staff instruction behind these actions constituting "secret law," *id*. at 1, Plaintiff concedes that a D.C. Circuit judge remarked in a hearing that "'[t]here's no regulations'" on the deportations to El Salvador and that "'nothing was adopted by the agency officials that were administering this.'" *Id*. at 3 (quoting U.S. Appeals Court Judge Patricia Millett).  Tellingly, Plaintiff concluded its status report by claiming that "[t]his case was intended to prevent these kinds of forceful, secretive overreaches by the executive branch.  And it still can."  *Id.* at 4.

Because the parties could not agree on a resolution of this case, it is now ripe for summary judgment.

## LEGAL STANDARDS

FOIA cases are typically and appropriately resolved on motions for summary judgment. *See Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Yonemoto v. Dep't of Veterans Affs.*, 686 F.3d 681, 688 (9th Cir. 2012) ("Because facts in FOIA cases are rarely in dispute, most such cases are decided on motions for summary judgment."). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995), *appeal after remand*, 132 F.3d 1481 (D.C. Cir. 1997).

In FOIA cases, the court should grant summary judgment to the government if "the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136–37 (D.D.C. 2011) (citation omitted). Agencies meet that burden by submitting declarations that are clear, reasonably detailed, and nonconclusory, absent contradictory evidence in the record or evidence of agency bad faith. *See, e.g.*, *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *see also L.A. Times Commc'ns, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 899–900 (C.D. Cal. 2006) (granting summary judgment based on agency's detailed and nonconclusory declarations, and noting that agency's position "is not controverted by contrary evidence in the record or any evidence of agency bad faith").

**ARGUMENT**

Because the undisputed facts establish that ICE produced the records that Plaintiff's complaint sought and that ICE is complying with its reading room obligations, ICE is entitled to summary judgment. Plaintiff's complaint seeks the production of certain records that Plaintiff claims ICE is required to affirmatively disclose under 5 U.S.C. § 552(a)(2). ICE produced those records to Plaintiff. In its status report, Plaintiff does not dispute that, or any of the other representations in ICE's declaration about its search and production. Instead, Plaintiff seeks to turn this case into a vehicle to challenge actions by ICE that it disagrees with by claiming that none of ICE's existing, published policies authorize those actions, so there must be hidden policies that ICE has failed to publish. That is a far cry from what this case is about—the production of records that Plaintiff identified as not being posted to ICE's reading room—or from what a lawsuit under 5 U.S.C. § 552(a)(2) permits.

I.      **ICE has provided Plaintiff all the relief available to it in this FOIA case under 5 U.S.C. § 552(a)(2).**

The uncontroverted facts are that ICE has provided Plaintiff all the relief available to it in this § 552(a)(2) FOIA case. As this Circuit has explained, FOIA's remedial provision "is aimed at relieving the injury suffered by the individual complainant, not by the general public." *Kennecott*, 88 F.3d at 1202–03. In cases brought under FOIA's proactive disclosure provisions, "[p]roviding documents to the individual fully relieves whatever informational injury may have been suffered by that particular complainant; ordering publication goes well beyond that need." *Id.* at 1203. Here, ICE has gone above and beyond remedying Plaintiff's claimed injury by voluntarily posting the requested records online.

An agency's search for records responsive to a FOIA request, whether one made under § 552(a)(2) or (a)(3), is adequate if it is "reasonably calculated to uncover all relevant documents."

11

*Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The D.C. Circuit has held that "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). "And adequacy—not perfection—is the standard that FOIA sets." *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015). Agency declarations "will ordinarily suffice to establish the adequacy of an FOIA search effort if they are relatively detailed and nonconclusory and submitted in good faith." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (internal quotation marks and citation omitted). And agency declarations "enjoy a presumption of good faith." *Id.*

In its declaration, ICE explained its search for the three categories of requested records that the parties agreed ICE would produce, and its production of those records to Plaintiff by voluntarily posting them online. First, ICE averred that it searched its SecureRelease platform for the requested FOIA Logs and then posted the retrieved logs to its website. *See* ECF No. 31-1 ¶ 9. Regarding policy statements and interpretations, ICE searched a central repository of ICE policies called the ICE Policy Manual ("IPM"). *Id.* ¶¶ 19–23. It downloaded all policies contained in the repository, reviewed them policy-by-policy, and produced all responsive, non-exempt policies. *See id.* ¶ 23. Although ICE determined that searching the IPM would be sufficient to identify all policies, out of an abundance of caution, ICE searched four other offices as well—ERO, HSI, Office of Human Capital, and Office of the Chief Financial Officer. *Id.* ¶ 21. Those offices reviewed Plaintiff's request and performed manual and keyword-based searches of, *inter alia*, network shared drives, Microsoft SharePoint folders, email accounts, and program-specific policy libraries and file systems. *Id.* ¶ 23. ICE processed and produced all responsive, non-exempt policies provided by those offices. *Id.* ¶¶ 21–23.

As for staff manuals and instructions, ICE first explained that under § 552(a)(2)(C), agencies must make available "administrative staff manuals and instructions to staff that affect a member of the public." *Id.* ¶ 24. Covered records do not address purely internal operations or matters, but instead detail the enforcement of public laws or agency regulations. *Id.* Nor do covered records address law enforcement matters. *Id.* ICE identified six program offices—ERO, HSI, OIPE, OPA, OAQ, and IGP—as reasonably likely to have responsive records and instructed those offices to conduct searches. *Id.* ¶ 26. Those offices performed manual and keyword-based searches of, *inter alia*, network shared drives, Microsoft SharePoint folders, email accounts, and program-specific file systems. *Id.* ¶ 28. ICE then processed and produced all responsive, non-exempt records that the program offices' searches identified. *Id.* ¶¶ 24–28.

The declaration also reiterated why it was not necessary to search for and produce final opinions and orders or forms, and confirmed that the agency's FOIA reading room contains or links to all responsive forms. *Id*. ¶¶ 10–18. The declaration describes ICE's productions in detail, and explains that it produced all responsive, non-exempt records to Plaintiff by voluntarily posting them to its FOIA Library and directing Plaintiff to the postings in its monthly production letters. *Id.* ¶¶ 29–31. And it explains what exemptions were claimed to withhold records in part or in full. *Id.* ¶ 32.

Finally, ICE averred in its declaration that it "will continue to fulfill its statutory duty to regularly update its FOIA reading room." *Id*. ¶ 34. It noted that it was working on a new guidance document about complying with the obligation to post policies and staff manuals and that it would continue consulting with DHS's Office of the Principal Legal Advisor to ensure compliance with § 552(a)(2). *Id*. ¶¶ 36, 38.

13

ICE's declaration thus establishes in a clear, detailed, and nonconclusory manner that it: 1) discharged its obligation to search all places reasonably likely to have responsive records; 2) produced all such non-exempt records; and 3) will continue to comply with (a)(2) moving forward. *See Weisberg*, 705 F.2d at 1351 (asserting that the search must be "reasonably calculated to uncover all relevant documents" and that "[t]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." (alteration in original) (citation omitted)); *DiBacco*, 795 F.3d at 191 ("[A]dequacy— not perfection—is the standard that FOIA sets.").

Moreover, ICE's FOIA Library demonstrates that ICE has continued to regularly update its FOIA Library, consistent with its declaration.[3]  Records were posted there as recently as May 12, May 9, May 7, May 5, May 2, April 30, and so on.  *See id.*  Even filtering the FOIA Library results to just policies, procedures, and manuals shows that documents were added as recently as May 12 (005-2025 Delegation of Limited Customs Officer Enforcement Authority to Enforcement and Removal Operations (Apr. 16, 2025)), April 8 (Updated terminology for communications materials and internal and external communications Mar. 31, 2025), March 20 (Directive: 19010.3 Body Worn Camera – Feb. 19, 2025), March 3 (11005.4 Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits), and further back.  *See id.*  Plaintiff's status report indeed acknowledges that ICE has

---

[3] *FOIA ICE Library*, ICE, https://www.ice.gov/foia/library.  The Court may consider the posting of records to the FOIA Library on summary judgment.  *Cf. Pharm. Rsch. & Mfrs. of Am. v. United States Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies."); *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C.Cir.2013) (taking judicial notice of document posted on the District of Columbia's Retirement Board website).

regularly updated its reading room in recent months, citing to ten records that were added since January 22, 2025.  ECF No. 37.

Because ICE's declaration and the FOIA Library show that there is no genuine dispute that ICE has produced all the records to Plaintiff that it requested, and on top of that, is complying with its (a)(2) obligations, the Court should enter summary judgment in favor of ICE.  *See, e.g.*, *ACLU*, 628 F.3d ,at 619; *see also L.A. Times Commc'ns*, 442 F. Supp. 2d at 899–900 (granting summary judgment based on agency's detailed and nonconclusory declarations, and noting that agency's position "is not controverted by contrary evidence in the record or any evidence of agency bad faith").

## II.    Plaintiff's wholly speculative claims to the contrary cannot defeat summary judgment.

Plaintiff does not dispute any of these facts.  Indeed, it supports its assertion that ICE has failed to fulfill its statutory duty to regularly update its FOIA reading room by citing to policies that ICE in fact posted to its reading room since January 22, 2025.  ECF No. 37 at 2–3 ("In its sworn affidavit, ECF 31-1, Defendant ICE promised 'to fulfill its statutory duty to regularly update its FOIA reading room.' . . .  It has failed.  Since 2025, ICE has published the following policies to its reading room:").  Beyond that, rather than identifying any actual policies or staff instructions that ICE has allegedly failed to publish in its reading room or produce to Plaintiff, like it did in its complaint, Plaintiff apparently argues that actions ICE has taken that Plaintiff disagrees with are not authorized by "extant" policies or staff instructions currently posted to the reading room, those policies or staff instructions must nonetheless exist, and ICE must publish that "secret law."  ECF No. 37 at 1–4.

But it is well established that speculation that records must exist is not sufficient to defeat an agency's declaration about the adequacy of its search at summary judgment in FOIA cases.  *See*

*DiBacco*, 795 F.3d at 190–91 (rejecting requester's argument that the agency's failure to turn up documents he felt "certain must exist" demonstrated the inadequacy of the search and stating "[w]e put that losing claim to bed twenty-five years ago and age has not improved it" (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 n.13)); *Oglesby,* 920 F.2d at 67 n.13 (dismissing appellant's argument that records must have been created in connection with a meeting due to that meeting's importance as "pure speculation" and asserting that "hypothetical assertions are insufficient to raise a material question of fact" as to the adequacy of the search); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" (quoting *Ground Saucer Watch*, 692 F.2d at 771)); *Alyeska Pipeline Serv. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (holding that "a motion for summary judgement adequately underpinned is not defeated simply by bare opinion or an unaided claim that a factual controversy persists"); *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("[M]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search[.]"); *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) ("[T]he agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records.").

Even if there were credible allegations of withheld (a)(2) records postdating ICE's completion of production in this case, which there are not, Plaintiff would first have to submit a new FOIA request for those records to have standing to seek them in litigation. *See Prisology, Inc.*, 852 F.3d at 1117. Plaintiff would then have to seek permission to amend its complaint, for a third time, to prosecute such a claim in this case, which permission may not be granted. *Cf. Bonner*

*v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991) (observing, in a FOIA case brought under subsection (a)(3), that "[t]o require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing"); *Church of Scientology v. IRS*, 816 F. Supp. 1138, 1148 (W.D. Tex. 1993) (observing that "there has to be a temporal deadline for documents that satisfy [a FOIA] request").

To the extent that Plaintiff's argument is that there are no policies or staff instructions that authorize the ICE actions with which Plaintiff disagrees, that would obviously not support a failure to produce records under § 552(a)(2).  Nor does FOIA "obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980); *see also Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("A requester is entitled only to records that an agency has in fact chosen to create and retain."); *Humane Soc'y of the United States v. U.S. Fish & Wildlife Serv.*, 838 F. App'x 721, 731 (4th Cir. 2020) ("FOIA does not entitle Appellants to the prospective relief they seek as to documents *not yet in existence*.").

Ultimately, Plaintiff's current position, as set forth in its status report, is merely a last-ditch effort to keep this case alive in order to challenge ICE's actions, rather than its compliance with FOIA.  But if Plaintiff wishes to challenge the actions undertaken by ICE, rather than its production of documents, the proper vehicle is a claim under the Administrative Procedure Act.  *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").  What Plaintiff cannot do, however, is keep this FOIA case open *ad infinitum*, based on its disagreement with actions undertaken by ICE since completing production in this case.  Because

17

the undisputed facts establish that no legitimate controversy within the scope of this case remains, the Court should grant Defendant summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Defendant on all of Plaintiff's claims.


Dated: May 13, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Elisabeth J. Neylan*
Elisabeth J. Neylan
Trial Attorney (N.Y. Bar Reg. No. 6125736)
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 616-3519
Fax: (202) 616-8460
E-mail: Elisabeth.J.Neylan@usdoj.gov

*Counsel for Defendant*